Putnam J.
delivered the opinion of the Court. The mam objection which has been made to the proceedings at the trial, is, that the testimony of Lee and the depositions of Russell ought not to have been received for the defendants. It is contended that the evidence proves that Wood made bad blankets for other persons, and that this circumstance has no tendency to prove that he made bad blankets for tire plaintiffs ; that it is no better than to offer evidence of general bad reputation, when a party should be held to prove the particular fraud.
And the case of Holcombe v. Hewson, 2 Campb. 391, has been much relied upon, and is the strongest which we have seen for the plaintiffs. In that case Holcombe was bound *168 to prove that he had supplied Hewson with good beer, and he offered to prove that several other persons who dealt with him while he supplied the defendant, were satisfied with hb beer, as being of excellent quality ; but Lord Ellenborough held the evidence to be inadmissible, because he might have dealt well with some, but not well with other customers. This case was properly decided. But the evidence offered by the plaintiff was of his own doings and conduct in regard to strangers, from which it was intended to be inferred that his conduct towards the defendant had been similar. That would be clearly a non sequitur. But in the case at ■ bar the evidence objected to does not arise between the party who furnished the damaged goods and the purchaser, but between strangers to the manufacturer. The evidence comes in collaterally, and is greatly, if not unavoidably, connected with other testimony which is admitted to be material and competent. The point to be proved by the defendants was, that the blankets were' njured by some other cause than the perils of the sea. They had a peculiar appearance ; they were so singularly spotted and marked, that Lee, who had imported blankets from England, of similar appearance, would have supposed they were the same. This happened in 1828, the same year that the plaintiffs imported those now in question. It happened also, that a great many bales of blankets exactly resembling the plaintiffs’ were imported that year from England into New York. Now it is conceded that it would be perfectly competent to compare the plaintiffs’ blankets with the other damaged blankets, in order to satisfy the jury that it was not the damage of the sea which operated so peculiarly and injuriously. It is not contended but that it would be proper to prove that they all came from England ; hut that evidence would be much less satisfactory than to trace them to one manufactory in England. If you may properly go to the manufactory, why not to the name of the manufacturer. It is not easy to draw the line. They are marked and injured as no other blankets were,, which have been imported. They may have been injured by persons at Wood’s manufactory, without his knowledge, and so without any intention of fraud on his part ; it *169 may have been done by some enemy, with a view to prejudice Wood in his business.
_ In the case of Holcombe v. Hewson before cited, Lord Ellenborough said, “ let the plaintiff call those who frequented the defendant’s house and drank the beer which he sent in.” Why not, in the case at bar, call those who bought of Wood, blankets marked in this extraordinary manner at the ' same time ? The object is not to impute a fraud to the manufacturer, (for we do not see any motive he could have to destroy the blankets,) but to prove in a suit between other parties, that the injury did not arise from sea damage. And the evidence, that the great number of bales of blankets which came that year, in six ships, from Wood’s manufactory, had these distinguishing marks upon them, which are ascertained to have been such as would be occasioned by sulpnunc acid, is we think admissible as tending to disprove the allegation of the plaintiffs, that the injury arose from the perils of the sea.[1]
It is contended, however, that a new trial should be granted for misdirection in stating to the jury that the plaintiffs must prove a damage to the amount of five per cent to entitle them to a verdict, which the jury must have understood to mean five per cent upon the whole cargo and not on any particular bale of the goods, whereas, according to the terms of the policy, the damage was to be computed as if each bale had been separately insured.
We do not think the plaintiffs are in a situation to make this exception. The attention of the judge was not drawn to the point, at the trial. The particular clause in the policy was not a subject of discussion. The counsel for the plaintiffs did not put their case upon the right to recover for the damage upon the single package, but upon the whole invoice.
He commented upon the fact, that some of the bales were wet on the outside, to show that the injury for which they claimed, was from the sea ; and when the defendants’ counsel stated the grounds upon which the jury should assess the damages *170 for the plaintiffs if the verdict should be for them, viz. the known rule, of the difference in value between the sound and the unsound in New York, and allowance of the same proportion of the invoice price, it was assented to by the counsel for the .plaintiffs. If the judge were mistaken in regard to any fact material to be considered, it would be not only proper and right, but the duty of the party to give him an opportunity to explain it. We think there was an acquiescence in the correctness of the charge at the trial.[2]
We are all of opinion that the judgment should be rendered upon the verdict.

 See Leach v. Woods, 14 Pick. 461; Rice v. Bancroft, post, 472; Crease v Barrett, 1 Crompt. Mees. & Rosc. 930.

 See Standisk v. Washburn, 21 Pick. 237; Greenl. on Evi. § 52; Botiomley v. United States, 1 Story’s R. 135 ; Boldron v. Widdows, 1 Car. & P. 65.